In re Petition of the City of Allegheny for viewers for the Grading, etc., of Fulton Street. Appeal of Mary Dewar and Henry Landgraff.

*Municipal law—Street improvements—Ordinances—Advertisement necessary.*

The power of cities to inaugurate proceedings for street improvements is to be exercised by ordinance duly passed for that purpose, which ordinance must be duly published according to law. This publication is mandatory and a condition precedent to the lawful enactment of the ordinance.

The publication of one ordinance which was not, however, finally passed and approved cannot apply by virtue of cognate subject-matter to a subsequent ordinance which, although duly passed and approved, was not advertised as required by law. That the first is void needs no discussion and the failure to advertise the second is likewise fatal.

Argued April 27, 1898. Appeal, No. 144, April T., 1898, by Mary Dewar and Henry Landgraff, from decree of C. P., No. 2, Allegheny Co., July T., 1897, No. 658, appointing road viewers. Before WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Exceptions to report of viewers. Before C. P. No. 1, Allegheny County.

It appears from the record and evidence that this case arose on the petition of the city of Allegheny for the appointment of viewers to assess the benefits and damages arising from the grading, paving and curbing of Fulton street, between Adams street and Hudson street, in the city of Allegheny. Viewers were appointed and proceeded with the duties of their appointment and at the hearing the attorney for appellants introduced evidence showing that the said street was improved without the petition of a majority in number and interest of the owners of property abutting thereon; that on September 29, 1896, an ordinance was introduced in the councils of the said city authorizing the grading, etc., of said street between said points; that it was at once referred to the committee on public works; that beginning October 7, 1896, it was published for a period of ten days; that on November 5, 1896, the committee on public

works instructed the director of public works to advertise for proposals for the work; that on December 3, 1896, the proposals received were opened by the committee on public works, and an ordinance awarding the contract ordered printed and sent to councils, and that this second ordinance was passed in both branches of councils and received the affirmative notes of three fourths of the members.

*Error assigned* was overruling the exceptions and confirming the report of viewers.

*Chas. W. Dahlinger*, for appellants.—If the city of Allegheny has any authority to grade, etc., streets without petition, it is only by virtue of the Act of May 22, 1895, P. L. 105.

The first ordinance directing the grading, etc., which was the one advertised, was never passed by councils, but was changed during its passage, into an ordinance awarding the contract for doing the work. That this reason alone is a valid one for holding the entire proceedings illegal, appellant thinks admits of no doubt. Clearly it was contrary to the Act of May 23, 1874, P. L. 230, sec. 3: Altoona v. Bowman, 171 Pa. 307; Bladen v. Phila., 60 Pa. 464.

It is a condition precedent to vesting jurisdiction in councils: Olds v. Erie City, 79 Pa. 380; Erie v. Moody, 176 Pa. 478; Fell v. Phila., 81 Pa. 58; Bradford v. Fox, 171 Pa. 343.

*Elliott Rodgers*, for appellee.—As long as the original purpose is not changed, councils can mould ordinances to carry it into effect. This is one of the purposes of reference to committees. Such action is entirely without the prohibition in the Wallace act, which is, that no bill shall be so altered or amended, on its passage through either branch, as to change its original purpose. Mere matters of detail of principal object of ordinance, are not different subjects: In re Opening of Twenty-fifth Street, 42 Legal Int. 444.

OPINION BY SMITH, J., July 29, 1898:

The question here involves the validity of an ordinance under which certain street improvements were made, the cost of which the city seeks to collect from the appellants. The

legislative proceedings of the city councils relate to two ordinances.  The first, introduced September 29, 1896, is as follows :

" An Ordinance authorizing the grading, paving and curbing of Fulton street, from Adams street to Hudson street, Sixth ward.

" Section 1.  Be it ordained, etc., That the Department of Public Works be and it is hereby authorized and directed to advertise for proposals for grading, paving and curbing of Fulton street, from Adams street to Hudson street, Sixth ward, in accordance with specifications prepared by said Department. The Committee on Public Works is hereby authorized to report an ordinance awarding the contract for said work to the lowest responsible bidder.  The cost and expense of said improvement to be assessed and collected in accordance with the provisions of the acts of assembly in such cases made and provided.

" Section 2.  That so much of any ordinance as may conflict with or be supplied by the foregoing, be and the same is hereby repealed."

This ordinance was duly published for ten consecutive days within a reasonable time after its introduction, but no further steps toward its passage seem to have been taken.  It originated in the city councils by virtue of the Act of May 22, 1895, P. L. 105.

In pursuance of the provisions of this ordinance, the director of public works was authorized to advertise for proposals for grading, paving and curbing Fulton street.  This was done, and proposals were received and opened.  Thereupon the following ordinance was sent to councils by the clerk of the committee on public works.

" An ordinance awarding a contract for the grading, paving and curbing of Fulton street from Adams street to Hudson street, Sixth ward, and providing for assessment and collection of the cost and expense thereof.

" Section 1.  Be it ordained, etc.  That the director of the department of public works be and he is hereby authorized and directed to enter into a contract with Thomas Carson, the lowest responsible bidder, for the grading, paving and curbing of Fulton street from Adams street to Hudson street, Sixth ward, according to specifications, for the sum of six hundred forty-

seven dollars and seventy-five cents ($647.75), as per his pro-
posal. The cost and expense of the same to be assessed and
collected in accordance with the provisions of the acts of as-
sembly in such cases made and provided.

"Section 2. That so much of any ordinance as may conflict
with or be supplied by the foregoing, be and the same is hereby
repealed."

This second ordinance was not advertised or published after
its introduction, as required by the act of May 22, 1895. It
was otherwise duly passed, having received the affirmative
votes of three fourths of the members of each branch, and was
approved by the mayor December 22, 1896.

It is contended on behalf of the city that these ordinances
are identical; that the second is in furtherance of the manifest
purpose of the first; that the terms of the contract for paving
were merely a matter of detail, not changing the subject, and
that these were in fact inserted in the original ordinance. A
comparison of the ordinances will not sustain this view. The
title of the first relates to "the grading, paving and curbing,"
and its most important section authorizes the department "to
advertise for proposals for grading, paving and curbing," and
"to report an ordinance awarding the contract for said work."
The second is entitled "An ordinance awarding a contract for
the grading," etc.; and its principal section authorizes the de-
partment "to enter into a contract with Thomas Carson, the
lowest responsible bidder, for grading," etc. The first ordi-
nance clearly called for a second, and this is supplied by the
ordinance of December 22, 1896. The first does not in terms
or in form, as printed for us, indicate any place wherein the
subject-matter of the second could be inserted. Each is dis-
tinct and complete in title and context. Taken together they
sufficiently cover the subject-matter of both; considered sepa-
rately, the provisions of one, could not be held to include the
terms or substance of the other. In order to complete the
work commenced by the first ordinance, its terms explicitly
call for a second. It is not pretended that the first was passed
or the second advertised as required by law. Hence neither
can be sustained. That the first is void until finally passed
by the councils and approved by the mayor, is a proposition
that needs no discussion. The failure to advertise the second

is likewise fatal. · The Act of 1895, P. L. 105, conferred upon cities the power to make street improvements and charge the cost thereof against the abutting properties, without regard to the wishes of such owners. Formerly those improvements were instituted by the petition of the property owners themselves. The power of the cities to inaugurate the proceedings is to be exercised by an ordinance duly passed for that purpose. This requires, inter alia, that it "be published in each official newspaper of such cities ten days immediately following the introduction thereof." It is admitted that this was not done as to the second ordinance. This publication is mandatory and a condition precedent to its lawful enactment. We need not pursue the subject.

The action of the department of public works in advertising for proposals, and the submission of the second ordinance by the committee on public works before the adoption of the first ordinance authorizing it, were illegal and void. The assessment of damages by the viewers under the second ordinance and all proceedings connected therewith are also void.

The decree of the court below is reversed, the exceptions to the report of viewers are sustained and that report is set aside at the costs of the appellee.